**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Alicia Brown,

                Plaintiff,

v.

Patrick R. Donahoe, Postmaster
General, United States Postal
Service,

                Defendant.

Case No. 2:10-CV-12374

Hon. Sean F. Cox

_____/

## OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this employment discrimination action against her employer, asserting that

her employer discriminated against her on the basis of her race and gender, created a hostile

work environment for her, and retaliated against her for having complained about the

discrimination.  The matter is currently before the Court on Defendant's Motion for Summary

Judgment.  The parties have briefed the issues and the Court heard oral argument on May 31,

2012.  For the reasons that follow, this Court shall GRANT Defendant's Motion For Summary

Judgment.

### BACKGROUND

Plaintiff's complaint asserts the following claims: "Race Discrimination and Harassment

in Violation of The 1991 Civil Rights Act & Title VII" (Count I); "Gender Discrimination and

Harassment in Violation of The 1991 Civil Rights Act & Title VII" (Count II); and "Retaliation"

1

(Count III), brought under Title VII.

The evidence, taken in the light most favorable to Plaintiff, reflects the following. Plaintiff Alicia Brown was employed as a Manager of Customer Services at the Wayne Post Office in Westland, Michigan, from approximately 2006 until 2010. (Brown Dep. at 8.) While serving as Manager at the Wayne Post Office, Plaintiff was supervised by Kevin Brandon from 2007 until 2008. (Brown Dep. at 10.) Beginning in May 2007, Plaintiff's work performance was openly criticized by Brandon at a meeting attended by Post Office Operations Manager Carmen Hughes, and district Manager Nancy Rettinhouse. (Plf's Br., Exhibit 2, pg. 4.) Also in May, Plaintiff was denied finance training by Brandon. (Plf's Br., Exhibit 2, pg. 5.) Plaintiff alleges, and Defendant disputes, that traditionally Managers were allowed to select and schedule their own training. (Plf's Br., Exhibit 2, pg. 5.)

In June 2007, Brandon began prescribing what shift Plaintiff would be required to work, contrary to other managers who were able to select their own shift and hours. (Brown Dep. at 69-70.) On two separate occasions Brandon refused to provide Plaintiff with a replacement supervisor while she was on annual leave. (Brown Dep. at 65; Plf's Br., Exhibit 2, pg. 5.) Plaintiff contends it was the responsibility of Brandon, as Plaintiff's supervisor, to provide her with a replacement during these specified periods. Plaintiff began complaining to co-workers and supervisors about Brandon's alleged discriminatory behavior starting in July, 2007 with her conversation with Carmen Hughes. (Plf's Br., Exhibit 2.) Plaintiff also maintains that she spoke with Theresa Kimbrough and Roosevelt Baugh concerning Brandon's behavior in late 2007 and June, 2008, respectively. (Plf's Br., Exhibit 2; Plf's Br., Exhibit 7.)

In January 2008, Plaintiff was again denied the opportunity to take mandatory rural mail

2

count training by Brandon. (Brown Dep. at 95-96.)  Mr. Brandon however, scheduled all of the

Canton supervisors, Westland employees, and the Supervisor of Customer Services Mark

Frankhouse, whom Plaintiff had been assigned to train and manage, for this particular training.

(Plf's Br., Exhibit 9.)  Mark Frankhouse also replaced Plaintiff in a February 2008 Managed

Service Points refresher training. (Brown Dep. at 97-98.)  Plaintiff was responsible for payroll,

therefore she contends this was a course she needed to attend. (Brown Dep. at 102-103.)

In January 2008, Brandon referred to Plaintiff as a liar in an email on which another

postal employee, Deborah McGahan, was copied. (Plf's Br., Exhibit 2, pg. 5.)  In October 2008,

Plaintiff was informed by Brandon that on Mondays she was required to work until 6:30 pm.

(Plf's Br., Exhibit 11.)  The change to Plaintiff's schedule resulted in her being required to work

12-13 hours on Mondays.  Plaintiff further alleges that at no time was she told that this schedule

was temporary, nor was any other employee subject to a regular schedule that included a 12 hour

work day.  Shortly thereafter, Brandon began requiring his secretary maintain a file as it relates

to all correspondence had with Plaintiff. (Brown Dep. at 113-115.)

On November 4, 2008, Plaintiff took a lower level detail assignment as an Acting

Customer Service Manager, EAS 19. (Plf's Br., Exhibit 2, pgs. 7-8.)  Her previous position was a

Customer Service Manager, EAS 20.  The following day, November 5, 2008, Brandon sent an

email to Cheryl Skotak in which he referred to Plaintiff as a "peach" and stated she was "too

stupid to realize it." (Plf's Br., Exhibit 2, pgs. 8, 14; Brown Dep. at 44-45.)  Brandon further

requested in the same email that Cheryl Skotak "make sure she fails miserabl[e]y!". (Plf's Br.,

Exhibit 15.)  On November 5, 2008, Plaintiff filed an EEOC Claim, and on October 14, 2009

filed an EEOC Complaint. (Plf's Br., Exhibit 13; Plf's Br., Exhibit 18.)  Thereafter, Plaintiff

3

filed this action alleging discrimination on the basis of race and sex, and retaliation.

## ANALYSIS

### I.        Should Certain Events Be Deemed Untimely And Not Be Considered?

In its motion, Defendant first asserts that several of the alleged incidents that Plaintiff

bases her claims upon are untimely and that those alleged incidents cannot be considered.  In

support of this position, Defendant argues that federal employees are required to contact an

EEOC counselor within 45 days of an alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1);

*Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003), *cert. denied*, 541 U.S. 990 (2004).  If

discrete discriminatory acts are untimely, they are then not actionable. *Nat'l R.R. Passenger*

*Corp. V. Morgan*, 536 U.S. 101, 102-03 (2002).  Because several of the incidents listed in

Plaintiff's complaint were not reported to an EEOC counselor within 45 days, Defendant argues

they are not actionable and thus cannot be considered by this Court.  Defendant further states

that Plaintiff's discrete discriminatory allegations do not constitute continuous violations, and

thus do not elude the 45 day limitation period under the "continuing violations" doctrine.

In response, Plaintiff contends that all of the alleged acts of discrimination and

harassment should be considered by this Court because the "continuing violations doctrine

applies."  In support of this argument, Plaintiff asserts that all of the alleged acts of

discrimination and harassment are relevant in that there was a continual pattern of violating

behavior.  Plaintiff directs this Court to *Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir. 1999),

in which the court stated the "application of the continuing violation doctrine is appropriate

where a plaintiff has demonstrated a policy of discrimination or a continuing course of

discriminatory conduct."  Plaintiff asserts that the doctrine is designed to "address circumstances

where discrimination becomes increasingly apparent as discrete acts build over time to reveal a pattern or practice." *Weigel v. Baptist Hosp.*, 302 F.3d 367, 376 (6th Cir. 2002).  Further, Plaintiff contends because at least one of these incidents falls within the limitations period, all incidents should be considered by this Court.  For the reasons below, this Court shall find all incidents occurring before September 21, 2008 (45 days before Plaintiff filed her EEOC complaint) time barred as it relates to Plaintiff's discrimination claim.

Typically a person who claims to have been discriminated against in violation of Title VII must file a claim with the EEOC within either 180 or 300 days of the alleged discriminatory practice, and must exhaust their administrative remedies before they may seek relief in federal court. 42 U.S.C. 2000e-5(e); *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992).  Federal employees, however, have a different complaint procedure and must contact an EEOC counselor within 45 days of the discriminatory act. 29 C.F.R. § 1614.105(a).  Plaintiff, being an employee of the USPS since 1993, would have incidents not reported within 45 days statutorily barred unless they fall within the "continuing violations" doctrine exception.

The "continuing violations" doctrine allows courts to toll limitation periods for alleged discriminatory conduct that is deemed continuing in nature.  Under the "continuing violations" doctrine, where "there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Haithcock*, 958 F.2d at 677. "To establish a continuing violation, plaintiff must first produce evidence of a current violation taking place within the limitations period.  Second, plaintiff must show that the current violation...is indicative of a pattern of similar discriminatory acts continuing from the period prior to the limitations period." *Weigel v. Baptist Hosp. Of E.*

5

*Tennessee*, 302 F.3d 367 (6th Cir. 2002) (citing *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir. 1996)).

In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), a Title VII action, the majority opinion written by Justice Thomas emphasized the clear distinction between applying the continuing violations doctrine to "hostile environment claims" and applying it to "discrete claims of discrimination or retaliation."  As held in *Morgan*, "[e]ach incident of discrimination...constitutes a separate actionable 'unlawful employment practice'.  [Plaintiff] can only file a charge to discrete acts that occurred within the appropriate time period." *Id*. at 114.  In other words, when an employee seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the limitations period. *See Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

Presently, the Sixth Circuit recognizes continuing violations that fall within two categories of narrowly limited exceptions.  The first category of continuing violations arises "where the plaintiff can show prior [wrongful] activity that continues into the present." *Bowerman v. Int'l Union*, 646 F.3d 360, 366 (6th Cir. 2011).  The most common instance of a continuing violation under this category occurs when an employer gives unequal pay for equal work, and thus the employer is committing an illegal act each time the employer dispenses the unequal pay.  Here, Plaintiff has not shown that her employer, Brandon, has committed any illegal act that continues into the present, nor can she show that any actions in the past constitute a pattern of wrongful activity.  Of the thirteen incidents listed by Plaintiff, only three fall within the 45 day limitations period.  Amongst these three incidents, only one has any arguable relation to past events that fall outside the limitations period.  The November 5, 2008 email in which

Brandon calls Plaintiff a "peach" and "too stupid to realize it", is arguably related to the January 2008 incident in which Brandon calls Plaintiff a "liar" in an email.  Given the weak indication of discrimination from these two instances, coupled with the fact that no wrongful activity on behalf of Brandon continue into the present, Plaintiff has not satisfied the first category under the continuing violations doctrine as recognized by the Sixth Circuit.

The second category of continuing violations recognized in the Sixth Circuit is "where the plaintiff can show a longstanding and demonstrable policy of discrimination." *Bowerman*, 646 F.3d at 366.  To establish this category, plaintiff "must demonstrate something more than the existence of discriminatory treatment in his case...the preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." *Sharpe*, 319 F.3d at 268-69.  As to this type of continuing violation, Plaintiff has neither pled nor shown any longstanding and demonstrable policy of discrimination by Defendant.

Ultimately, Plaintiff is attempting to use a discrete act that occurred within the limitations period to resuscitate multiple discrete acts that occurred outside the limitations period.  For the above mentioned reasons, the "continuing violations" doctrine does not apply to Plaintiff's discrimination claim.  The time line for filing with the EEOC begins on the date of the discrete discriminatory act; each discrete act begins a new time trigger for that specific act.  In this instance, the only incidents that are within the limitations period are as follows: 1) Plaintiff's work schedule is increased on Mondays to 12-13 hour days on October 27, 2008; 2) Plaintiff takes lower level detail assignment as Acting Customer Service Manager, EAS 19 on November 4, 2008; 3) Plaintiff discovers the email sent from Brandon in which he refers to Plaintiff as a

"peach" and "too stupid to realize it" and requests "[Skotak] make sure [Plaintiff] fails

miserabl[e]y!".  Accordingly, the rest of the incidents are time barred as it relates to her

discrimination claim. A different analysis is used in hostile work environment claims which is

addressed later.

## II.     Plaintiff's Race And Age Discrimination Claims Based On Disparate Treatment

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial

evidence to prevail on her discrimination claim.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir.

2004).

Here, Plaintiff does not contend that her claims are supported by any direct evidence of

age or gender discrimination.  Thus, she must rely on circumstantial evidence.

The familiar "three-step framework developed in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and modified by *Texas Dep't of Community*

*Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), guides the analysis" of

employment discrimination claims based upon circumstantial evidence.  *Provenzano,* 663 F.3d at

811-12.  In the first step, the employee carries the initial burden of establishing a prima facie

case of race or gender discrimination; if the employee meets this burden, the second step requires

the employer to respond by articulating some legitimate, non-discriminatory reason for the

adverse employment action at issue.  *Id*. at 812.  "Third, assuming such a response is made, the

employee then bears the burden of rebutting this proffered reason by proving that it was pretext

designed to mask discrimination."  *Id.*

In *Macy*, the Sixth Circuit explained the relevant burdens at the summary judgment stage

as follows:

> "On a motion for summary judgment, a district court considers whether
> there is sufficient evidence to create a genuine dispute at each stage of the
> *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651,
> 661 (6th Cir. 2000). Thus, the plaintiff must first submit evidence from which a
> reasonable jury could conclude that a prima facie case of discrimination has been
> established. *Monette v. Elec. Data Sys., Corp.*, 90 F.3d 1173, 1186 (6th Cir.
> 1996). The defendant must then offer sufficient evidence of a legitimate,
> nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff
> must identify evidence from which a reasonable jury could conclude that the
> proffered reason is actually a pretext for unlawful discrimination. *Id.*

*Macy v. Hopkins County School Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007).

### A.   Can Plaintiff Establish A Prima Facie Case Of Race Or Sex Discrimination Based On Disparate Treatment?

As the parties acknowledge, in order to establish a prima facie case for discrimination based on disparate treatment, the plaintiff must establish: 1) she was a member of a protected group; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) she was treated differently than similarly-situated, non-protected employees.

Here, there is no dispute that Plaintiff was a member of protected groups (female and African-American). Defendant also does not appear to dispute that Plaintiff was qualified for her position. Rather, Defendant's motion asserts that Plaintiff cannot establish that she suffered an adverse employment action or that she was treated differently than similarly-situated, non-protected employees.

### 1.   Did Plaintiff Suffer An Adverse Action?

Plaintiff argues there was an adverse employment action taken against her when her work hours were significantly increased on Mondays and further she was compelled to transfer to a different location. Plaintiff maintains that it was Brandon's actions that compelled her to leave her post at the Wayne office. Plaintiff ostensibly argues that the increased work hours created an

adverse change in the terms of her employment and the change in title from a level 20 to a level

19 employee constitutes a less distinguished title.

In order to show she has suffered an adverse employment action, Plaintiff must establish

that she has suffered a materially adverse change in the terms or conditions of employment

because of the employer's action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir.

2000).  A "materially adverse change might be indicated by a termination of employment, a

demotion evidenced by a decrease in wage or salary, *a less distinguishable title*, a material loss

of benefits, significantly diminished material responsibilities, or other indices that might be

unique to a particular situation." *Watson v. City of Cleveland*, 202 Fed. Appx. 844, 854 (6th Cir.

2006) (emphasis added).  Plaintiff was provided the same salary, benefits, and material

responsibilities when she voluntarily transferred to the Dearborn branch.  The only difference

between the Wayne and Dearborn locations was that Plaintiff was a level 20 employee at Wayne

and a level 19 employee at Dearborn.

As stated by Plaintiff in her Deposition, this transfer was only temporary, and did not

affect her salary, benefits, or job responsibilities. (Brown Dep. at 92-93.)  The most notable

difference between Plaintiff's case and other cases involving adverse employment actions is that

Plaintiff's transfer was voluntary.  Plaintiff's situation is much like the plaintiff in *Yates v. Avco*,

819 F.2d 630 (6th Cir. 1987), in which the court determined the plaintiff did not suffer an

adverse employment action where temporary demotion was in response to plaintiff's own

request to transfer away from a harassing supervisor.  The plaintiff's salary and benefits were not

reduced, and plaintiff was assured she would receive the next available position at her original

level. *Id.* at 638.  In the current case, Plaintiff admitted the transfer to Dearborn was only

temporary, and was done at her own request. (Brown Dep. at 91-93.)  Much like the plaintiff in

*Yates*, Plaintiff's demotion to a less distinguished title was voluntary as well as temporary. On

April 2010, Plaintiff was promoted to Postmaster of Ypsilanti, Michigan. (Brown Dep. at 8,

127.)

Similarly, in *Momah v. Dominguez*, 239 Fed. App'x 114 (6th Cir. 2007), the court held

that "a purely lateral transfer or denial of the same, which by definition results in no decrease in

title, pay or benefits, is not an adverse employment action for discrimination purposes."

Accordingly, Plaintiff's voluntary transfer from the Dearborn location to the Wayne

location does not constitute an adverse employment action.

In regards to the longer working hours, however, Plaintiff has pled sufficient facts to

indicate that an increased work day from eight to twelve hours is a materially adverse change in

the terms or conditions of employment because of her employer's action. *Nguyen*, 229 F.3d at

562.

For the reasons stated above, Plaintiff's voluntary transfer to the Wayne location does not

constitute an adverse employment action; but there was an adverse employment action as to the

increased work hours on Mondays.

> **2.      Can Plaintiff Show That She Was Treated Differently Than Similarly-
> Situated, Non-Protected Employees?**

In her Deposition, Plaintiff states that Jimmy Archibald, Sue Yahasz, and Reginald

Dapremont were the three employees similarly-situated to her and received different treatment

than she. (Brown Dep. at 109-111.)  The Sixth Circuit has held:

> "To be deemed 'similarly situated,' the individuals with whom the plaintiffs
> seeks to compare her treatment must have dealt with the *same supervisor*,
> have been subject to the same standards, and have engaged in the same

conduct without such differentiating or mitigating circumstances that
would distinguish their conduct or the employer's treatment of them."

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis

added).

In the current action, Brandon is the only supervisor accused of discriminatory conduct.

Of the individuals named by Plaintiff, only Reginald Dapremont was supervised by Brandon.

(Brown Dep. at 109-111.)  Reginald Dapremont, an African American male, is only a non-

protected comparator for the purposes of Plaintiff's gender discrimination claim.  Thus, no prima

facie case as to Plaintiff's race discrimination claim has been shown.

In regards to her sex discrimination claim, Plaintiff alleges that Brandon scrutinized her

work differently by keeping files of all correspondence had with Plaintiff, assigned Plaintiff 12-

13 hour work days on Mondays, was denied numerous training opportunities, and required

Plaintiff to find her own leave replacements. (Doc. Entry No. 1 ¶ 13.a; Brown Dep. at 94, 101-

102; Brandon Decl. ¶ 10.)  However, as noted above, the only incidents that are timely as it

relates to a similarly-situated employee is the 12-13 hour work day allegation.[1]  Plaintiff has,

however, offered sufficient evidence to create a genuine issue of material fact as to whether her

sex was a motivating factor in Brandon's decision to increase her work hours.  Defendant now

has the burden of articulating a legitimate, non-discriminatory reason for the adverse

employment action (i.e. 12-13 hour work day). *Burdine*, 450 U.S. at 254.

---

[1]Even if all events were considered timely, however, the record evidence shows that the
only similarly-situated employee was not treated more favorably as to the alleged events.  The
only other similarly-situated employee, Reginald Dapremont, was not provided a replacement
supervisor during his leave time and was likewise openly criticized by Brandon. (Dapremont
Decl. ¶¶ 4, 5; Hughes Decl. ¶¶ 6, 8, 10.)

**B.      Can Defendant Articulate A Legitimate, Non-Discriminatory Reason Regarding Why Plaintiff Was Treated Differently Than Similarly-Situated Non-Protected Employees?**

Once a plaintiff meets her burden of establishing a prima facie case, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence that it took the challenged actions for a legitimate, non-discriminatory reason. *Id.*

Plaintiff alleges she was treated differently than similarly-situated employees when Brandon required she work a 12-13 hour work day on Mondays.  In response, Defendant directs this Court to Plaintiff's deposition in which she admits that other managers sometimes work longer hours than classified employees. (Brown Dep. at 74.)  Also, Defendant indicates that Brandon informed Plaintiff that she could use personal time to make up for the longer hours and that this was the regular practice of some managers.  In the declaration of Carmen Hughes, Post Office Operations Manager, she stated postal supervisors are expected to work eight hour days and in emergency work situations 10-14 hour days to cover for the absences of other employees, and that she herself has worked many such long hour days. (Hughes Decl. ¶ 7.)  Carmen, like Plaintiff, is an African American female.

Reginald Dapremont, an African American male, stated in his Deposition that he himself had worked 12-14 hour days and that he used personal absence time to offset working these long hours. (Dapremont Decl. ¶ 3.)  Carmen Hughes further stated that she believed management should use available employees to avoid overtime to cover the employees' absences and working such hours is expected of supervisors. (Hughes Decl. ¶ 9.)  Defendant further stresses that Plaintiff ultimately never actually worked the long Monday workdays as temporarily scheduled by Brandon and these were legitimate business reasons for the actions taken.

Defendant has articulated a legitimate, non-discriminatory reason why Plaintiff's hours were increased on Mondays.

### C.      Can Plaintiff Establish Pretext?

"Pretext may be shown either directly, by persuading the trier of fact that a discriminatory reason more than likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence." *Wright v. Murray Guard, Inc*., 455 F.3d 702, 707 (6th Cir. 2006).

A plaintiff can refute the legitimate, non-discriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason:  1) had no basis in fact; 2) did not actually motivate the defendant's challenged conduct; or 3) was insufficient to warrant the challenged conduct.  *Wexler v. White Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003); *Manzer*, 29 F.3d at 1084.  The first type of showing consists of evidence that the proffered bases for the termination never happened (*i.e.*, that they are factually false).  With respect to the second kind of showing, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id*.  The third showing consists of evidence that other employees, particularly those not in the protected class, were not fired even though they engaged in similar conduct.  *Id.*

Where a case is at the summary judgment stage, a plaintiff seeking to prove discrimination via indirect evidence must submit sufficient evidence from which a reasonable jury could conclude that the defendant's non-discriminatory reasons for its actions are a pretext for unlawful discrimination.  *Vincent v. Brewer*, 514 F.3d 489, 494 (6th Cir. 2007).

14

Here, Plaintiff asserts Defendant's offered reason justifying an adverse employment action had no basis in fact, and that "a discriminatory reason more likely than not motivated management."

Aside from stating untimely incidents alleging discriminatory treatment, Plaintiff has not articulated any reason why she believes Defendant's reason justifying the adverse employment action has no basis in fact. The declarations of Carmen Hughes and Reginald Dapremont both establish that the long work hours sometimes required of managers is expected of all managers. Plaintiff's gender discrimination claim is rebutted by the fact that Reginald Dapremont worked these extended hours and continues to do so from time to time. (Dapremont Decl. ¶ 3.) Carmen Hughes also indicated she has and continues to work these extended work hours. (Hughes Decl. ¶ 7.)

Plaintiff has also failed to articulate why "a discriminatory reason more likely than not motivated management." She has failed to indicate any behavior exhibited by Brandon that is unique to her regarding her gender. For the above mentioned reasons, Plaintiff has failed to show Defendant's reason justifying an adverse employment action is pretext and thus fails to establish a sex discrimination claim based on disparate treatment.

Accordingly, Plaintiff's claim of age and race discrimination based on disparate treatment shall be DISMISSED.

**III.    Plaintiff's Hostile Work Environment Claim**

In Counts I and II, Plaintiff also appears to assert that she was subjected to a hostile work environment based on her age and race.

As the parties acknowledge, in order to establish a prima facie case for hostile work

15

environment based on age or race, the plaintiff must establish: 1) the employee is a member of a protected class, 2) the employee was subject to unwelcomed harassment, 3) the harassment was based on the employee's protected class, 4) the harassment created a hostile work environment, and 5) the employer failed to take reasonable care to prevent and correct any harassing behavior.

Here, there is no dispute that Plaintiff was a member of protected groups (female and African-American). Rather, Defendant's Motion asserts that Plaintiff cannot establish the remaining four elements under a hostile work environment claim.

For the reasons stated below, this Court shall DISMISS Plaintiff's hostile work environment claim.

**A.    Should Certain Events Be Deemed Untimely And Not Be Considered In Regards To A Hostile Work Environment Claim?**

In regard to hostile environment claims, the Court in *Morgan v. National Railroad Passenger Corp.*, 536 U.S. 101, 103 (2002), stated, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Thus, in deciding whether a plaintiff can use the "continuing violations" doctrine to introduce evidence of incidents occurring outside the limitations period, courts will have to determine whether these incidents are acts "contributing to" the incidents that occur within the limitations period. *Id.*

In the current case, of the three timely incidents, one is related to incidents occurring outside the limitations period. The November 5, 2008 email sent from Brandon to Cheryl Skotak relates to the 2007 incident in which Plaintiff hears secondhand that Brandon referred to her as "stupid" and "unable to perform her duties" and also the January 2008 email in which Brandon refers to Plaintiff as a "liar." Along with the three incidents mentioned earlier, these two related

16

incidents will be considered in Plaintiff's hostile work environment claim.

      **B.**     **Can Plaintiff Establish A Prima Facie Case Of Hostile Work Environment?**

As stated by the Court in *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000), a "hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  When analyzing a hostile work environment claim "both an objective and subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.*

Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Looking at all incidents that are timely or fit within the continuing violations doctrine exception in a light most favorable to Plaintiff, her hostile work environment claim fails. Offhand comments and isolated offensive utterances do not amount to an environment that a reasonable person would find hostile or abusive. *Id.*  Further, Plaintiff has not established that Brandon's actions were due to her race or sex.

Much like the plaintiff in *Walker v. Nat'l Revenue Corp.*, 43 F. App'x 800 (6th Cir. 2002), Plaintiff has only presented evidence that Brandon was the type of supervisor for whom no employee wanted to work.  Plaintiff has not provided any evidence that Brandon's actions

17

were motivated by gender or race discrimination.  The deposition of Reginald Dapremont

indicates that Brandon verbally criticized him, and it was also not unusual for Brandon to

criticize employees in front of others. (Dapremont Decl. ¶ 5.)  Postmaster Theresa Kimbrough,

who was Brandon's replacement at the Monroe Post Office, indicated in her declaration that *all*

of her employees were subjected to cursing, and rude behavior from Brandon. (Kimbrough Decl.

¶ 11.)  Further, Plaintiff's own Deposition indicates that Brandon was ill-mannered to *everyone*.

(Brown Dep. at 24-25.)  Although Brandon's conduct would have been unpleasant to tolerate, it

was neither severe nor pervasive enough to constitute a hostile work environment, nor did

Plaintiff show she was singled out based on her race or gender.

Plaintiff furthermore fails to satisfy the fifth element in that the postal service took

reasonable care to prevent and correct harassment.  Postal policy specifically prohibits

harassment and advises employees who believe they have been victims of harassment to bring

the matter to the attention of management. (Hughes Decl. ¶ 11.)  Once the postal service was

informed, it took action to correct Brandon's conduct and he was disciplined for the November

5, 2008 email regarding Plaintiff. (Brandon Decl. ¶ 14.)  Accordingly, the postal service did not

fail to take reasonable care to prevent and correct any harassing behavior.

For the reasons stated above, Plaintiff has failed to establish a prima facie hostile work

environment claim.  Accordingly, Plaintiff's hostile work environment claim shall be

DISMISSED.

## IV.    Retaliation

In Count III, Plaintiff asserts that Defendants retaliated against her for having complained

about Defendant's discriminatory employment practices.

18

**A.      Has Plaintiff Exhausted Her Administrative Remedies As To This Claim?**

In her EEOC form, Plaintiff checked two boxes indicating race and sex discrimination, and noticeably left the Retaliation box unchecked. (Def's Br., Exhibit J, pg. 1.)  This omission is not dispositive of whether Plaintiff exhausted her administrative remedies. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).  The general rule is that the "judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hosp. Of East Tennessee*, 302 F.3d 367 (6th Cir. 2002).  This is known as the "expected scope of investigation test" and requires a plaintiff to have alleged sufficient facts in her EEOC complaint to put the EEOC on notice of the other claim even though the Plaintiff failed to check the appropriate box on the EEOC's complaint form. *Ashcroft*, 392 F.3d at 271.  Basically, the facts alleged in the body of the EEOC charge, rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge.  Plaintiff's EEOC form and attached statement only indicate facts that support a disparate treatment claim, and would not prompt the EEOC to investigate a different, uncharged claim (retaliation). (Def's Br., Exhibit J, pg. 1-2.)  Much like the plaintiff in *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir. 2010), Plaintiff's allegations in her complaint have exceeded the scope of her EEOC charge.  Along with her attached statement, there is nothing in Plaintiff's EEOC form that would put the EEOC on notice of a retaliation claim. *See* 42 U.S.C. § 2000e-5(f)(1).

Title VII prohibits employers from penalizing an employee who engages in protected activity under the "opposition clause," which protects employees who complain about discrimination, and the "participation clause," which protects employees who testify or assist

others who have complained about discrimination.  Here, Plaintiff is ostensibly asserting that she was penalized for having opposed Brandon's discriminatory conduct.  Under the EEOC Compliance Manual, an example of opposition is a "complaint or protest about alleged employment discrimination to a manager, union official, [or] co-worker." 2006 WL 4672793 (E.E.O.C.C.M.), 2.  Plaintiff's complaints about Brandon's conduct to Carmen Hughes, Theresa Kimbrough, and Roosevelt Baugh, all constitute opposition as defined under the EEOC Compliance Manual. (Hughes Decl. ¶ 12; Exhibit 2, pg. 2.)  Therefore, Defendant's assertion that Plaintiff's only protected activity was the initial contact with the EEOC on November 5, 2008, is incorrect. (Def's Br. at 19.)

Plaintiff's reliance on her complaints to Carmen Hughes in July 2007, Theresa Kimbrough in late 2007, and Roosevelt Baugh in June 2008, work against her retaliation claim being considered timely. (Hughes Decl. ¶ 12; Plf's Br., Exhibit 2, pg. 2.)  Retaliation claims are typically excepted from the filing requirement because they usually arise *after* the EEOC charge is filed. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1999).  However, this exception "does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed." *Id.*  All of the alleged conduct occurred before Plaintiff filed her EEOC complaint on November 5, 2008, therefore this exception does not apply.  Plaintiff's attached statement also fails to indicate any adverse employment action taken in retaliation of her complaint concerning Brandon's behavior. (Def's Br., Exhibit J, pg. 2.)  For these reasons, Plaintiff has failed to allege sufficient facts in her EEOC complaint to put the EEOC on notice of her retaliation claim.

Accordingly, Plaintiff has not exhausted her administrative remedies and thus cannot

assert a retaliation claim.  Plaintiff's retaliation claim shall therefore be DISMISSED.

**Conclusion & Order**

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary

Judgment is GRANTED and this action shall be DISMISSED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  June 11, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on
June 11, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager